<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR
CITIZENS COMMUNITY BANK

                Plaintiff,

v.

FRANK A. MUSTILLI

                Defendant.

Civ. No. 09-3568

**O P I N I O N**

*Appearances by:*

RIKER, DANZIG, HYLAND & PERETTI, LLP
by: Julian W. Wells, Esq. and Stephanie D. Edelson, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962

   *Attorneys for Plaintiff*

<u>**DEBEVOISE, Senior District Judge**</u>

      This matter comes before the Court on a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) submitted by Plaintiff, the Federal Deposit Insurance Corporation ("FDIC"). Additionally, the FDIC moves to dismiss the counterclaim asserted against it by Defendant Frank A. Mustilli for failure to state a claim upon which relief can be granted. Mr. Mustilli submitted no opposition to either motion, and did not appear at oral arguments. Therefore, Mr. Mustilli will be deemed to have admitted all factual assertions

contained in the Statement of Material Facts submitted by the FDIC. See L. Civ. R. 56.1 ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts … any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.").

The undisputed evidence demonstrates that Mr. Mustilli received a loan of $500,000 from Citizens Community Bank ("CCB") on which he has defaulted. Therefore, the Motion for Summary Judgment submitted by the FDIC – which assumed control of CCB on May 1, 2009 after being appointed as Receiver for that institution pursuant to 12 U.S.C. § 1821(c)(2)(A)(ii) – will be granted.

The FDIC's Motion to Dismiss Mr. Mustilli's counterclaim will also be granted. Mr. Mustilli asserts that there was an understanding between himself and various CCB executives that he would not be required to reimburse the bank for the aforementioned loan. That claim is contrary to the clear language of the loan agreement entered into by Mr. Mustilli and CCB, which explicitly stated that such payments were required. Moreover, the loan agreement between CCB and Mr. Mustilli explicitly disavowed such understandings by stating that any modification to its terms would be ineffective unless memorialized in a written agreement signed by representatives of the bank. Mr. Mustilli did not allege in his counterclaim that such a modification was ever completed, and has failed to produce any written documentation of the alleged understanding between himself and CCB. Therefore, the Court must give effect to the clear contractual terms of the loan agreement, and Mr. Mustilli's counterclaim will be dismissed.

## I. BACKGROUND

The loan that is the subject of this action was first issued on November 8, 2006. On that date, CCB and Mr. Mustilli executed a loan agreement in which the bank extended Mr. Mustilli a

line of credit of $300,000 to be repaid on December 31, 2007. The loan was secured by a mortgage on Mr. Mustilli's residence at 349 Prospect Street, South Orange, New Jersey 07079. The mortgage was memorialized in a Commercial Mortgage Note.

On February 26, 2007, CCB and Mr. Mustilli agreed to increase the principal amount of the loan from $300,000 to $500,000. In order to do so, Mr. Mustilli and representatives of CCB executed two contracts: (1) a Second Superseding Commercial Mortgage Note, and (2) a Second Mortgage Modification Agreement. The latter was a relatively short document that simply reiterated that the mortgage would be secured by Mr. Mustilli's residence and noted the increase in the loan principal. The former contained the terms and conditions of the loan agreement between the parties.

Among the terms and conditions contained in the Second Superseding Commercial Mortgage Note (the "Note") signed by Mr. Mustilli were provisions stating that:

(1) Frank A. Mustilli … hereby promises to pay to [CCB] … the aggregate amount of all advances made … pursuant to this promissory note … which have not previously been repaid … together with accrued interest thereon.

(2) The principal balance of the loan and all accrued and unpaid interest and other charges will be due on the Maturity Date.

(3) This Note can be amended, modified, or cancelled only in writing signed by the Bank.

Thus, the Note (1) explicitly stated that Mr. Mustilli was obligated to reimburse the bank for the full amount of the loan, plus interest, on the "Maturity Date" of December 31, 2007, and (2) expressly disavowed any outside understandings by stating that any modification to the loan contract would be ineffective unless memorialized in writing and signed by representatives of the bank. Additionally, the parties agreed that Mr. Mustilli would not assert claims against the bank

in an effort to avoid his payment obligations and would bear the costs of any expenses relating to collection actions in the event of default.  The Note reflected that agreement, stating:

> [Mr. Mustilli] shall have no right to fail, offset or refuse to make any payments under this Note by reason of any claim, demand, or suit of any nature or kind.
>
> …
>
> [Mr. Mustilli] agrees to pay all costs of enforcement or collection of this Note and Mortgage, including reasonable attorneys' fees and court costs, in the event [Mr. Mustilli] defaults [o]n its obligations.

On December 31, 2007 – the Maturity Date of the Note – the parties executed an agreement extending the loan period by one year to December 31, 2008 ("Extension Agreement").  The Extension Agreement incorporated the terms and conditions contained in the Note and stated that they would remain in effect.[1]

Prior to the extended Maturity Date of December 31, 2008, Mr. Mustilli made periodic payments on the Note principal totaling approximately $28,000.  At the time the remainder of the money became due, he refused to render payment.  In its October 19, 2009 brief in support of its Motion for Summary Judgment, the FDIC claimed that Mr. Mustilli owed $506,006.54.  That amount included the remaining principal of $472,373.30, along with interest of $9,470.20 and late fees of $24,163.04, both of which have continued to accrue during the period between the FDIC's original submission and this ruling.  The $506,006.54 claimed by the FDIC does not include attorneys' fees or court costs.

On March 4, 2009, CCB brought suit against Mr. Mustilli in the Superior Court of New Jersey seeking payment on the Note.  On April 23, 2009, Mr. Mustilli submitted an Answer in

---

[1] The Extension Agreement referred to the original November 8, 2006 loan agreement between CCB and Mr. Mustilli.  The terms of that Agreement were modified and superseded by the Second Mortgage Modification Agreement, which incorporated the terms of the Note.  Thus, although the Extension Agreement referred to the November 8, 2006 loan agreement between the parties, it incorporated the terms and conditions of that agreement as modified by the Note.

which he asserted a "counterclaim" against the bank.[2]  The counterclaim did not assert a cause of action against the bank, but rather argued as a factual matter that at the time the loan was disbursed there was an understanding between Mr. Mustilli and the President and Chairman of the Board of CCB that it would be used to repay another loan made by the bank to Lori Montenegro and a company known as Blend, Incorporated.  Mr. Mustilli claimed that, pursuant to that understanding, he was not required to repay the loan.  Mr. Mustilli did not assert in his Answer that the alleged understanding between him and the aforementioned CCB executives was ever reduced to writing, and as of the date of this ruling he has not submitted any written documentation of such an agreement.

A mere week after Mr. Mustilli filed his Answer, the New Jersey Commissioner of Banking declared that CCB was not financially sound and appointed the FDIC as the bank's Receiver pursuant to 12 U.S.C. § 1821(c)(2)(A)(ii).  The FDIC was substituted for CCB as a

---

[2] In addition to his counterclaim, Mr. Mustilli's Answer also included claims against Third-Party Defendants Richard Lanza and Barry Malkin for failure to repay loans that he allegedly made to those individuals in the amount of $98,900.  The Court presumes that Mr. Lanza and Mr. Malkin were involved with CCB in some capacity, but Mr. Mustilli did not include any statement to that effect in his Answer.  Nor did he include any background information on the nature of the alleged loans made to Mr. Lanza and Mr. Malkin, how they were related to the loan that is the subject of this litigation, or whether diversity of citizenship exists between himself and those individuals.  Without such information it is impossible to determine whether Mr. Mustilli's claims against Mr. Lanza and Mr. Malkin – which are premised on allegations of breach of contract sounding in state law – are sufficiently related to the cause of action asserted by the FDIC to justify the exercise of supplemental jurisdiction.  See 28 U.S.C. § 1367(a) (allowing a district court that has disposed of all claims over which it had original jurisdiction to exercise supplemental jurisdiction over state law claims as long as those claims are ""form part of the same case or controversy.").  Therefore, since the Court's jurisdiction over this suit is based solely on the fact that the FDIC is a party, see 12 U.S.C. § 1819(b)(2), and today's ruling disposes of all claims asserted by that agency, the Court will decline to exercise jurisdiction over Mr. Mustilli's claims against Mr. Lanza and Mr. Malkin.  See 28 U.S.C. §  1367(c)(4).  If Mr. Mustilli still wishes to pursue those claims, he is free to reassert them in a state court of proper jurisdiction.

party to the state action on July 13, 2009 and removed to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B) on July 21st of that year.

## II.  DISCUSSION

As a preliminary matter, it is necessary to determine the nature of the motions currently before the Court.  Although Mr. Mustilli styled his contention that he was not required to reimburse CCB for the $500,000 loan as a "counterclaim," that allegation is best viewed as an affirmative defense.  Mr. Mustilli does not assert any legal cause of action against the bank, but rather argues as a factual matter that he was not required to repay the loan and that "[t]he plaintiff, claiming a default on this loan and harming the credit of the defendant, has caused the defendant damage."  In other words, the essence of Mr. Mustilli's so-called "counterclaim" is simply an assertion that he is not liable, and the relief he seeks – attorneys' fees and damages to offset the harm to his credit rating resulting from attempts to collect – are premised on the bank's institution of this suit rather than any outside behavior.  Therefore, Mr. Mustilli's counterclaim is best treated as a defense to liability, and will be addressed in connection with the FDIC's Motion for Summary Judgment.[3]

**A.  Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing

---

[3] As discussed below, see infra n. 4, dismissal would be appropriate even if the Court were to address the FDIC's Motion to Dismiss Mr. Mustilli's counterclaim separately under the standard of review applicable to such motions under Federal Rule of Civil Procedure 12(b)(6).

law."  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary.  Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.  Id. at 251-52.

Under that standard, it is clear that the FDIC is entitled to summary judgment on its claim against Mr. Mustilli.  There is no dispute that CCB loaned Mr. Mustilli $500,000 and he has refused to repay the majority of those funds.  The Note, which Mr. Mustilli undisputedly agreed to, explicitly requires such repayment.  It also requires that Mr. Mustilli to pay various late fees and litigation expenses, including attorneys' fees and court costs, in the event of default.  Therefore, the Court will grant summary judgment in favor the FDIC on its claim against Mr.

Mustilli, and will award damages in the amount of all remaining principal and interest on the loan, along with late fees provided for by the Note, reasonable attorneys' fees and court costs.

Mr. Mustilli's contention that there was an understanding between himself and various CCB executives that he was not required to repay the loan is utterly without evidentiary support, and will therefore be rejected. Mr. Mustilli has produced no documentation of such an understanding. His claim that he was not required to repay the loan is rebutted by the clear language of the Note, which stated that "Frank A. Mustilli … hereby promises to pay to [CCB] … the aggregate amount of all advances made … pursuant to this promissory note … which have not previously been repaid … together with accrued interest thereon." Additionally, the Note expressly disavowed such outside agreements by stating that "[t]his Note can be amended, modified, or cancelled only in writing signed by the Bank." Therefore, the Court must apply the clear terms of the Note without reference to any outside understanding that may have existed between Mr. Mustilli and the bank, and Mr. Mustilli's claims that he was not required to pay must be disregarded.[4] See Bohler-Uddeholm, Inc. v. Ellwood Group, 247 F.3d 79, 93 (3d Cir. 2001) ("Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract.") (internal quotations and citations omitted).

---

[4] Mr. Mustilli's assertion that he was not required to pay would properly be disregarded even if the Court viewed Mr. Mustilli's allegations as a counterclaim and addressed the FDIC's Motion to Dismiss that counterclaim under the standard of review applicable pursuant to Federal Rule of Civil Procedure 12(b)(6). Even assuming that there was in fact an understanding between Mr. Mustilli and CCB executives that he would not be required to pay off the loan, such an understanding would not have altered his legal duties under the Note unless it was reduced to writing and signed by representatives of CCB. Mr. Mustilli does not contend that the understanding was ever recorded in writing. Therefore, his allegation that he was told by bank CCB executives that he was not required to pay would not be "enough to raise a right to relief above the speculative level," and the Court would be required to dismiss his counterclaim. Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 545 (2007).

8

### III.  CONCLUSION

For the reasons set forth above, the FDIC's Motion for Summary Judgment is granted and Mr. Mustilli's counterclaim against CCB is dismissed. The claims asserted against Mr. Lanza and Mr. Malkin in Mr. Mustilli's Answer are dismissed pursuant to 28 U.S.C. § 1367(c)(4).

The Court will enter an Order implementing this Opinion.

    **s/ Dickinson R. Debevoise**_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: January 7, 2010